UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Rushing, | File No. 25-cv-3909 (ECT/SGE) |
| Plaintiff, | |
| v. | |
| McGaw Medical Center of Northwestern University; Wood Health Company, LLC; U.S. Bank National Association; CaseMine, Inc.; Justia, Inc.; Other Online Publishers; State of Illinois, *ex rel. Office of the Attorney General (official capacity)*; State of Ohio, *ex rel. Office of the Attorney General (official capacity)*; and State of Minnesota, *ex rel. Office of the Attorney General (official capacity only for venue and oversight purposes)*, | **OPINION AND ORDER** |
| Defendants. | |

This lawsuit is one of four that Plaintiff Marcus Rushing has recently initiated in this District. *See Rushing v. McGaw Med. Ctr. of Northwestern Univ.*, No. 25-cv-1957 (JRT/DTS) (D. Minn. filed May 1, 2025); *Rushing v. HealthPartners*, No. 25-cv-2001 (PAM/EMB) (D. Minn. filed May 5, 2025); *Rushing v. McGaw Med. Ctr. of Northwestern Univ.*, No. 25-cv-3894 (PJS/DLM) (D. Minn. filed Oct. 9, 2025). Rushing also has initiated related litigation in the United State District Court for the Northern District of Ohio and at least two state courts. *See Rushing v. Wood Health Co., LLC*, No. 3:24-cv-845, 2025 WL 959472 (N.D. Ohio Mar. 31, 2025); ECF No. 5-2 at 1–47 (filings from Ohio state-court case); ECF No. 5-1 at 77–98 (Illinois state-court complaint). Though not identical, these lawsuits involve overlapping allegations against his former employers, including McGaw

Medical Center of Northwestern University ("McGaw") and Wood Health Company ("Wood Health"), among others, concerning events leading up to and following his employment separation from those entities.

I

Rushing did not pay the filing fee for this case, instead requesting *in forma pauperis* ("IFP") status. ECF No. 2. While Rushing is financially eligible for IFP status, under the federal statute governing IFP cases, an IFP application will be denied, and an action will be dismissed, when an IFP application fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service.").

When assessing whether a complaint states a claim for which relief may be granted, a court must accept the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, a court may disregard legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Though pro se complaints are to be construed liberally,

2

they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation modified).

II

Rushing's 57-page Amended Complaint lacks focus and is difficult to follow. The pleading's genesis stems from the acrimonious breakdown of his employment relationship with McGaw. After that relationship ended, Rushing filed an administrative complaint against McGaw alleging unlawful discrimination and retaliation, which appears the parties later settled. Am. Compl. [ECF No. 5] ¶¶ 103–05, 109; *see* ECF No. 5-1[1] at 78.[2] Rushing, however, contends that McGaw and later Wood Health, his employer after McGaw, wrongfully inserted themselves in his divorce proceedings in Illinois state court. Am. Compl. at 6–8. In his view, McGaw's conduct during those proceedings violated the parties' settlement agreement, leading him to file a second administrative complaint against his former employer. *Id.* ¶¶ 22–23, 27. Rushing also contends that Wood Health acted wrongfully during those proceedings, contending that Wood Health terminated his employment after engaging in an *ex parte* communication with the presiding judicial officer. *Id.* ¶¶ 31, 36, 57, 110, 112.

---

[1] This exhibit can be considered because it is attached to the operative Amended Complaint and is a matter of public record. *See Hughes v. Banks*, 290 F. App'x 960, 962 n.1 (8th Cir. 2008); *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).

[2] Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

According to Rushing, these are not the only procedural irregularities he has encountered with his Illinois divorce proceedings, which remain ongoing. He claims, for example, that his confidential health information was disclosed during an "ex parte" conversation with the judge, McGaw's counsel, and his own counsel at the time, and that McGaw, Wood Health, and the other defendants have somehow conspired to prevent him from securing counsel throughout those proceedings and interfered with his right to access the courts. *Id.* ¶¶ 37, 39, 41, 107–10.

Rushing also claims that these perceived irregularities have not been limited to his divorce proceedings. He says that procedural abnormalities have also occurred with respect to the lawsuits he filed in state and federal courts in Illinois and Ohio, claiming, for example, that the judge in one of his cases dismissed the lawsuit without a hearing or prior notice, and that the judges in those proceedings have failed to rule on his motions. *See id.* ¶¶ 42–47, 67–68, 71, 78. In response to these irregularities, he claims he filed a lawsuit in this District, but irregularities persist, denying him notice and a fair opportunity to present his claims. *Id.* ¶¶ 48–66. The Amended Complaint describes each of these lawsuits—and the perceived irregularities with respect to each case—in painstaking detail. *See id.*

In addition, Rushing contends that Defendants CaseMine, Inc., Justia, Inc., and "other online publishers" have published false and misleading information on the status of his lawsuits, making it appear, for example, as though judgment has been entered against him in his cases when there has been no final adjudication on the merits. *Id.* ¶¶ 17–19, 55, 260. Finally, Rushing asserts that he also has sued U.S. Bank in state and federal court. *Id.* ¶ 80. Rushing alleges he is a "registered participant in Minnesota's Safe-at-Home

4

address-confidentiality program." *Id.* ¶ 13. He identifies U.S. Bank as a defendant in this case because he says that even though U.S. Bank unlawfully disclosed his "Safe-at-Home" address during the pendency of those lawsuits, the judge in the state-court case denied his request for relief and entered a show-cause order against him. *Id.* ¶¶ 80–81.

Thus, the predominate theme of this lawsuit is that, in Rushing's view, the Defendants have engaged in a coordinated effort spanning multiple lawsuits and several states to obstruct his access to the courts, deny him due process, and cast him in a negative light. He asserts more than fifteen causes of action alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as violations of Minnesota state law and state tort law. There are several problems with these claims. I begin with the federal causes of action.

III

Rushing asserts violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *See, e.g.*, Am. Compl. at 14–18.

A

The majority of Rushing's claims assert a violation of 42 U.S.C. § 1983.[3] To establish a plausible § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[3] I construe Rushing's claims asserting constitutional violations, *see, e.g.*, Am. Compl. at 34, as arising under 42 U.S.C. § 1983. *See Quality Refrigerated Services, Inc. v. City of Spencer*, 908 F.Supp. 1471, 1487 n.9 (N.D. Iowa 1995) ("[C]ourts have held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

deprivation was committed by a person acting under color of *state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). In this case, Rushing's § 1983 claims begin and end with the state actor requirement.

On their face, only three of the Defendants qualify as state actors: "State of Illinois, ex rel. Office of the Attorney General"; "State of Ohio, ex rel. Office of the Attorney General"; and "State of Minnesota, ex rel. Office of the Attorney General." *See* Am. Compl. ¶ 20. But a state—such as Illinois, Ohio, and Minnesota—is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). To the extent that Rushing attempts to circumvent this problem by qualifying that he is suing the attorney general's office of each of those states instead of the state directly, Rushing misapprehends the law. Rather, it is well-established that a state *and its agencies* are not persons subject to liability for the purposes of 42 U.S.C. § 1983 action. *See Will*, 491 U.S. at 70. Nor does Rushing overcome this problem by specifying that the claims are brought against the attorney general's office in its "official capacity," Am. Compl. ¶ 20, because an official capacity suit is the same as a suit against the office itself, *Will*, 491 U.S. at 71. Rushing's § 1983 claims against the State of Illinois, the State of Ohio, and the State of Minnesota, including claims against their agencies, namely, the Attorney General's Office for each state, fail as a matter of law and will therefore be dismissed.[4]

---

[4] Rushing does not seek damages against Illinois, Ohio, and Minnesota. *See* Am. Compl. ¶ 20 (noting these Defendants "are included . . . only for declaratory and prospective oversight relief"). If he had sought compensatory relief against these Defendants, Rushing's claims would be barred by Eleventh Amendment immunity. *See Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004); *Allen v. Purkett*, 5 F.3d 1151, 1153

This leaves Rushing's § 1983 claims against the remaining Defendants: McGaw, Wood Health, U.S. Bank, CaseMine, Justia, and Other Online Publishers. These Defendants are plainly *private* entities. As such, they "may be liable under § 1983 only if [the private entity] 'is a willing participant in joint action with the State or its agents.'" *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (quoting *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993)). To this end, "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor" regarding the violation of the plaintiff's constitutional rights. *Id.* (quoting *Mershon*, 994 F.2d at 451). "Mere allusion to such a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support." *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1058 (D. Minn. 2013) (first citing *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991); and then citing *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985)).

Rushing alleges there has been coordination across jurisdictions to deny him due process and to otherwise violate his constitutional rights. *See, e.g.*, Am. Compl. ¶¶ 86–88. Such conclusory allegations, however, are not entitled to the presumption of truth in determining whether he has stated a plausible claim for relief. *See Iqbal*, 556 U.S. at 678–79. Setting these allegations aside, Rushing asserts no particularized facts establishing the existence of a conspiracy between the private entities and state actors. To the extent that

---

(8th Cir. 1993) (per curiam) (affirming dismissal of claims against state agency based on Eleventh Amendment immunity).

7

Rushing contends that the presiding judicial officers and the non-state actors had the opportunity to conspire to deprive him of his constitutional rights when they spoke outside of his presence, "the opportunity to conspire 'is obviously not sufficient to nudge a conspiracy claim across the line from conceivable to plausible.'" *Magee*, 957 F. Supp. 2d at 1076 (quoting *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010)).

Rushing points to several instances where the judicial officers in these other lawsuits ruled against him, altered his pleadings, or even dismissed his claims without giving him an opportunity to be heard. *See, e.g.*, Am. Compl. ¶¶ 75–79. But these allegations, taken as true, fall well short of establishing that the private-actor defendants reached a meeting of the minds with state actors—not only with respect to each individual lawsuit, but across jurisdictions—to deprive him of his constitutional rights. Put another way, the mere fact that Rushing received adverse rulings in each of his lawsuits is insufficient to establish the existence of a multi-state conspiracy to violate his constitutional rights. *See Magee*, 957 F. Supp. 2d at 1058–59 (holding parallel conduct is insufficient to support a conspiracy claim). And to the extent Rushing alleges actions by the private parties caused the alleged procedural irregularities and detrimental rulings, "[t]hat a private actor does something which, in turn, causes state actors to act is not by itself sufficient to establish that the private actor can be treated as a state actor for purposes of § 1983." *Quinlan v. Puls*, No. 24-cv-3990 (ADM/DLM), 2025 WL 1393198, at *2 (D. Minn. May 14, 2025), *aff'd*, No. 25-2155, 2025 WL 3140794 (8th Cir. Nov. 10, 2025). Moreover, insofar as Rushing contends that his exhibits contain additional factual matter in support of his claims, I will not sift

through two hundred pages in search of it. *See Gregory v. Dillard's*, 565 F.3d 464, 473 (8th Cir. 2009) ("A district court . . . is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." (citation modified)). Rushing has failed to assert sufficient facts establishing that the private entity defendants—*i.e.*, McGaw, Wood Health, U.S. Bank, CaseMine, Justia, and Other Online Publishers—acted "under color of state law." The § 1983 claims against them will therefore be dismissed on that basis.

B

Rushing also asserts a claim under 42 U.S.C. § 1981. *See* Am. Compl. ¶¶ 105, 119. "[Section] 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, [but] the statute does not provide a general cause of action for race discrimination." *Gregory*, 565 F.3d at 468 (citation modified). "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights," though the statute is not "limited to existing contractual relationships" and "protects the would-be contractor along with those who already have made contracts, . . . thus appl[ying] to discrimination that blocks the creation of a contractual relationship that does not yet exist." *Id.* at 468–69 (citation modified). A § 1981 claim has four elements: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Id.* at 469. Section 1981 claims are analyzed under the same framework as Title VII claims. *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1225 (8th Cir. 2015).

Rushing's § 1981 claim appears to be based on "racial discrimination, retaliation, and constructive discharge" relating to his employment with McGaw.  *See* Am. Compl. ¶ 103.  The only fact offered to support this claim is that "racially charged and coercive statements" were made during a performance evaluation, including the following:

> I know that a big part of your character is seeking truth, and it may feel disingenuous to endorse anything that you disagree with.  But it will bite you in the ass if you don't learn to concede sometimes to the group, even if they are wrong.  You can be completely right, and it won't matter if people have already turned against you.  It is a dangerous world for a Black man, and you can't afford to make it more dangerous for yourself by being unable to let things go.

*Id.* at 16 ¶ 104.  This lone factual allegation is simply insufficient to plausibly allege any interference with his employment contract in violation of § 1981.  The main problem is that this statement isn't tied to any adverse employment decision.  This defeats any claim of racial discrimination or retaliation.  *See Keefe*, 785 F.3d at 1224–25 (noting a retaliation claim under § 1981 requires that "an adverse employment action was taken against" the employee); *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 807, 808 (8th Cir. 2020) (noting a race discrimination claim requires "adverse employment action").

As for any constructive discharge claim, "[a]n employee is constructively discharged if an employer renders the employee's working conditions so intolerable that the employee is forced to quit."  *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003) (quotation omitted).  "In order to establish constructive discharge, conditions must be 'sufficiently extraordinary and egregious.'"  *Gerald v. Kessinger/Hunter Mgmt. Co.*, No. 07-00475-CV-W-GAF, 2009 WL 877686, at *15 (W.D.

10

Mo. Mar. 30, 2009) (quoting *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008)). Moreover, an employee must show "[his] employer intended to force [him] to quit." *Id.* (quotation omitted). This single instance of a racially-charged statement does not establish sufficiently intolerable working conditions, and there are no allegations suggesting McGaw intended to force him to resign.

C

Rushing also asserts claims under 42 U.S.C. §§ 1985(2), 1985(3), and 1986. *See* Am. Compl. at 14, 42.

> In general terms, section 1985 proscribes five different types of conspiracies: (1) conspiracies to interfere with the performance of official duties by federal officers (section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of section 1985(2)); (4) private conspiracies to deny any person enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause of section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of section 1985(3)).

*Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986) (citing *Kush v. Rutledge,* 460 U.S. 719, 724 (1983)). Section 1986, in turn, establishes a cause of action for neglect to prevent the commission of a § 1985 violation. *See Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002). Accordingly, "[a] conspiracy under § 1985 is a prerequisite to a claim under § 1986." *Sebastian v. United States*, 531 F.2d 900, 904 n.11 (8th Cir. 1976).

To establish a conspiracy claim under § 1985(3), Rushing must show: "(1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996)). The plaintiff must also "show that the conspiracy is fueled by some class-based, invidiously discriminatory animus." *Id.* (citation modified). Similarly, to establish a conspiracy claim under the second clause of § 1985(2), the plaintiff must show the existence of a conspiracy and that the conspirators were "motivated by a class-based, invidiously discriminatory animus." *Kvalvog v. Park Christian Sch.*, 66 F.4th 1147, 1154 (8th Cir. 2023) (citing *Harrison*, 780 F.2d at 1429).[5]

There are several problems with Rushing's conspiracy claims. First, as described in detail above, he has failed to assert a plausible conspiracy claim. Second, he has failed to assert any facts suggesting that Defendants' conduct was motivated by class-based animus. While Rushing identifies himself as a "United States citizen of African descent," Am. Compl. ¶ 13, and alleges he was on the receiving end of a single instance of

---

[5]   Notably, to establish a cause of action under the first clause of § 1985(2), the plaintiff must show that there was a conspiracy to intimidate a witness in federal court. *See Sheets v. Butera*, No. 8:02CV5010, 2003 WL 223670, at *2 (D. Neb. Feb. 4, 2003) (citing cases). This provision does not require a showing of "racial or class-based animus." *Id.* (discussing *Kush*, 460 U.S. at 724–25)). Rushing, however, does not assert any facts suggesting that any of the defendants attempted to prevent him from testifying in federal court. *See* Am. Compl. Accordingly, I focus my analysis on the second clause of § 1985(2), which proscribes conspiracies to obstruct justice in state court. As described above, to establish a plausible claim under this provision, Rushing must establish that the conspirators were motivated by a "class-based invidiously discriminatory animus." *Kvalvog*, 66 F.4th at 1154.

racially-charged statements during a performance evaluation with McGaw, *id.* ¶ 104, these facts don't sufficiently establish that the Defendants' conduct was motivated by his status as either a United States citizen or man of African descent. *See Andrews*, 98 F.3d at 1079–80 ("[T]o succeed on a civil rights conspiracy claim, the plaintiff must demonstrate discriminatory purpose in that the defendants selected the particular course of action 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." (citation modified)). Rushing, therefore, has failed to assert a plausible § 1985 claim. Thus, he has failed to assert a plausible § 1986 claim, as well. *See Tumulty v. City of Minneapolis*, 511 F. Supp. 36, 38 (D. Minn. 1980) ("[S]ince no § 1985(3) action is stated, the derivative § 1986 claim must similarly be dismissed."). Accordingly, these claims will also be dismissed.

IV

Rushing's Amended Complaint references additional federal statutes: 28 U.S.C. §§ 1331, 1343(a)(3), 1367, 2201, and 1651(a). Am. Compl. at 48, 50–51. These statutes do not give rise to a separate cause of action. Section 1331, 1367, and 1343(a)(3) address the jurisdiction of federal courts. *See* 28 U.S.C. § 1331 (establishing original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1343(a)(3) (establishing original federal court jurisdiction over claims arising under 42 U.S.C. § 1983); 28 U.S.C. § 1367 (stating the scope of federal courts' supplemental jurisdiction). Section 2201, moreover, establishes the federal court's authority to issue declarative relief. *See* 28 U.S.C. § 2201. And section 1651(a) establishes the federal courts' authority to issue "all writs necessary or appropriate in aid of their

respective jurisdictions." 28 U.S.C. § 1651(a).  Here, for the reasons described above, Rushing has failed to assert a plausible claim for relief over which a federal court has jurisdiction.  To the extent, therefore, that Rushing requests some sort of writ or any type of declarative or equitable relief, those requests are denied as moot.

V

This leaves Rushing's request for relief under Minnesota state and tort law.  Namely, Rushing asserts claims for: (1) "Invasion of Privacy/Breach of Safe at Home Confidentiality" in violation of Minn. Stat. §§ 5B.01–12 and Minnesota common law, Am. Compl. at 44–46; (2) defamation and false light in violation of Minnesota common law, *id.* at 46–48; (3) "Defamation, False Light, and Denial of Due Process by Misuse of Publicly Accessible Court Information" in violation of Minnesota common law, *id.* at 48–50; (4) unauthorized access to financial records in violation of Minn. Stat. § 13A.02, *id.* at 52–53; (5) failure to safeguard customer information in violation of Minn. Stat. § 46A.02, *id.* at 53–54; and (6) deceptive trade practices in violation of Minn. Stat. § 325D.44, *id.* at 54.

The Eighth Circuit has instructed courts to not exercise supplemental jurisdiction over state-law claims where, as here, all federal claims are dismissed prior to trial.  *See Hervey v. County of Koochiching,* 527 F.3d 711, 726–27 (8th Cir. 2008).  There is no reason to deviate from this general rule here, and thus, I decline to exercise supplemental jurisdiction over these state-law claims.

VI

In sum, the entirety of this action will be dismissed without prejudice—the federal-law claims for failure to state a claim on which relief may be granted, *see* 28 U.S.C.

§ 1915(e)(2)(B)(ii), and the state-law claims because I will not exercise supplemental jurisdiction.

Rushing's motion for his IFP application and accompanying affidavit to be sealed is denied, because the information in those documents is not entitled to restrictions from public access. In light of the dismissal of this action, Rushing's pending motions will also be denied. Finally, Rushing is cautioned that a federal court "has authority to control and manage matters pending before it," and "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *In re Tyler*, 839 F.2d 1290, 1292–93 (8th Cir. 1988) (quotation omitted). Accordingly, Rushing is warned that repeatedly filing lawsuits against the same defendants about essentially the same subject matter will result in the imposition of restrictions on his ability to initiate new litigation in this District absent representation by counsel or the advance authorization of a judicial officer of this District.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff Marcus Rushing's Amended Complaint [ECF No. 5] is **DISMISSED WITHOUT PREJUDICE**.

2. Rushing's application to proceed *in forma pauperis* [ECF No. 2] is **DENIED**.

3. Rushing's motion to request redaction or sealing of the IFP application [ECF No. 4] is **DENIED**.

4.     Rushing's motion for protective filing of the Amended Complaint and petition for federal remedy [ECF No. 6] is **DENIED**.

5.     Rushing's motion for appointment of a special master [ECF No. 7] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 11, 2026                        s/ Eric C. Tostrud
                                                                                         Eric C. Tostrud
                                                                                         United States District Court